**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 27, 2016[*]
Decided October 28, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-2544

| | |
|---|---|
| WANDA E. TORRENCE, <br>     *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 15 C 6651 |
| COMCAST CORP., <br>     *Defendant-Appellee.* | Robert W. Gettleman, <br> *Judge.* |

## O R D E R

Wanda Torrence appeals from the district court's judgment upholding a bankruptcy court's dismissal of her adversary complaint. In that complaint, she asserted various tort and consumer-protection claims based on Comcast's violation of the stay that took effect automatically upon the filing of her bankruptcy petition. We affirm.

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Torrence filed for Chapter 7 bankruptcy in September 2014, and she wrote on her "Schedule F" list of creditors that she owed Comcast $364 for cable, phone, and television services. The bankruptcy petition triggered an automatic stay that prohibited Comcast from engaging in "any act to collect" pre-petition debts, *see* 11 U.S.C. § 352(a)(6), so the company immediately credited her account with $328 (it did not credit $36 she was billed in advance for post-petition services). She later amended her list of creditors to add $325 she owed Comcast for charges incurred through November. Her estate had no assets that could be distributed to creditors, so in January 2015 the bankruptcy court discharged her debts and closed the case.

The following month, Torrence filed an adversary complaint against Comcast. She alleged that Comcast had violated the bankruptcy court's automatic stay and discharge order, the Fair Debt Collection Practices Act, and the Fair Credit Billing Act by charging her for services she used *after* she filed for bankruptcy. She also alleged a state-law claim for intentional infliction of emotional distress based on periodic interruptions in service she experienced while her bankruptcy was pending.

The court reopened Torrence's bankruptcy sua sponte so it could consider her adversary complaint. But because Torrence had not served Comcast with the complaint, the court granted Comcast's motion to dismiss the complaint without prejudice for lack of personal jurisdiction. The court agreed with Torrence, however, that Comcast should have credited her account by the full $364 she initially had sought to discharge, so it held Comcast in contempt of the automatic stay. The court awarded Torrence $36 in actual damages and $181 in punitive damages. Neither party appealed.

A week after the court dismissed Torrence's adversary complaint, she filed a second adversary complaint against Comcast. This complaint raised the same claims as her previous one and added state-law claims for fraud and breach of contract. And, once again, these claims were all based on conduct that occurred after Torrence filed for bankruptcy.

The bankruptcy court also dismissed this complaint. The court explained that it already had remedied Comcast's initial violation of the automatic stay and that Torrence had not alleged any new violation of the automatic story or discharge order. And the court concluded that it lacked jurisdiction over Torrence's tort and consumer-protection claims—the claims neither "arose under" the bankruptcy code nor were "related to" the bankruptcy, as required by 28 U.S.C. § 1334(b).

Torrence then moved for reconsideration, asserting, without elaboration, that the bankruptcy judge and Comcast's attorney had mocked her and colluded to "dodge" her claims. The judge denied the motion, concluding that Torrence had not shown that the order of dismissal was erroneous.

Next Torrence appealed to the district court, where she reiterated the arguments she'd raised in the bankruptcy court and also accused the bankruptcy judge, for the first time, of not accommodating her hearing disability. The district court affirmed, explaining that Comcast had not violated the automatic stay or discharge injunction by billing her for services she used after filing for bankruptcy. Likewise, because Torrence's tort and consumer-protection claims all were based on post-petition conduct, they were not part of the bankruptcy estate and thus were not, as Torrence alleged, "related to" the bankruptcy for purposes of the bankruptcy court's jurisdiction. Finally, the district court acknowledged that the transcripts from the bankruptcy court revealed that "there were some problems with the court's sound system," but concluded that "the record reflects that the judge made every effort to accommodate plaintiff to ensure that she could and did participate."

In this court Torrence first challenges the bankruptcy court's conclusion that she failed to allege any plausible violation of the automatic stay or discharge order. She contends that because Comcast initially overbilled her by $36 after she filed for bankruptcy, the subsequent bills she received for post-petition services were "invalid." But the bankruptcy judge remedied Comcast's initial violation by awarding Torrence five times the amount she had been overbilled, and her post-petition debts were not discharged by the bankruptcy. *See In re Ruben*, 774 F.3d 1138, 1139 (7th Cir. 2014); 11 U.S.C. §§ 301(b), 362(a), 727(b). Comcast was not, as Torrence seems to believe, obliged to provide her with free services while her bankruptcy was pending.

Torrence next disputes the bankruptcy court's conclusion that it lacked subject-matter jurisdiction over her consumer-protection and tort claims. As Torrence sees it, the bankruptcy court should have allowed her to pursue those claims because they are "related to" the bankruptcy, *see* 28 U.S.C. § 1334(b). But a claim is only "related to" a bankruptcy if it is "likely to affect the debtor's estate." *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997). And the bankruptcy code defines "estate" as the "legal or equitable interests of the debtor in property *as of the commencement of the case*." *See* 11 U.S.C. § 541(a)(1) (emphasis added). Because Torrence's tort and consumer-protection claims all stem from conduct that she says occurred after she filed for bankruptcy, those claims are not a part of the bankruptcy estate. The bankruptcy

court thus correctly concluded that it lacked subject-matter jurisdiction over her post-petition claims. *See In re Rockford Products Corp.*, 741 F.3d 730, 732 (7th Cir. 2013) (recognizing that "related-to-bankruptcy" jurisdiction is improper where bankruptcy has closed and creditors' interests cannot be affected).

Finally, Torrence accuses the bankruptcy judge of refusing to accommodate her hearing disability and mocking her on account of her disability. She contends that she struggled to hear some of the proceedings after the headphones provided to her by the bankruptcy court malfunctioned. And she says that on one occasion the bankruptcy judge donned headphones himself, a gesture that she assumes must have been made to mock her. But Torrence waived these arguments by not developing them in the bankruptcy court. *See Bell v. City of Chicago*, No. 15-2833, 2016 WL 4525236, at *5 (7th Cir. Aug. 30, 2016); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). And, in any event, Torrence's allegations are baseless—our thorough review of the transcripts reveals that the judge treated her impartially and that she was able to hear well enough to participate in the proceedings meaningfully.

AFFIRMED.